UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WALTER ROBINSON, JR.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO.  2:07-cv-2165-SLB |
| | ) |
| **AIG MARKETING, INC.,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment.  (Doc. 17.)[1]  On July 20, 2009, the Magistrate Judge recommended that the Motion be granted and plaintiff's case be dismissed.  (Doc. 25.)  Plaintiff objected to the Magistrate Judge's Report and Recommendation, (doc. 26), to which defendant has responded, (doc. 29).  Having carefully reviewed and considered *de novo* all the materials in the court file, including the Report and Recommendation, plaintiff's Objection, and defendant's Response, the court is of the opinion that the Magistrate Judge's Recommendation is accepted and defendant's Motion for Summary Judgment will be granted.

**A.  OBJECTIONS OF FINDINGS OF FACT**

**1.  Objection to Report and Recommendation finding that Sadberry reported plaintiff had worked unauthorized overtime**.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

Plaintiff contends:

> Taking the evidence in the light most favorable to Plaintiff, the evidence indicates that [Ken] Sadberry never told [Andy] Kessler or [Marvin] Grant that Plaintiff worked unapproved overtime or had discrepancies on his timesheets. Furthermore, the evidence shows Plaintiff never worked overtime that wasn't approved. Therefore, Grant would have had no reason to terminate Plaintiff but for the complaint of discrimination that Plaintiff made to Grant on September 13. If Grant had no reason to investigate Plaintiff he must have investigated him for some other reason (e.g., because Plaintiff complained about discrimination to him).

(Doc. 26 at 5 [footnote omitted].)

Sadberry testified that he never *called* Kessler or Grant about discrepancies on plaintiff's timesheets. (Doc. 22, Ex. D at 83-84.)[2] However, he also testified that he had reported to Kessler that plaintiff had unapproved overtime on his time sheet. (Doc. 22, Ex.

---

[2]Sadberry testified:

> Q. Did you ever *call* Andy Kessler because you noticed there was any discrepancy in [plaintiff's] time sheets?
>
> A. No.
>
> Q. Did you ever *call* Melvin Grant because you noticed there was any discrepancies in [plaintiff's] time sheets?
>
> A. No.
>
> Q. Did you ever find yourself that there [were] any discrepancies in [plaintiff's] time sheets?
>
> A. No.

(Doc. 22, Ex. D at 83-84 [emphasis added].)

2

D at 128-29.)[3]  The record contains an e-mail from Billie Wray, plaintiff's immediate supervisor, to Sadberry, which Sadberry forwarded to Kessler and Kessler forwarded to Grant on September 21, 2006, reporting plaintiff's unauthorized overtime. (Doc. 18, Ex. E.) The e-mail chain started with Wray informing Sadberry that plaintiff had submitted unauthorized overtime:

> [Plaintiff] submitted a timesheet for the week [ending] 9/17 that listed overtime for 4.5 hours.  [He] submitted a timesheet for the week of 9/24 that listed 5 hours of overtime.

---

[3]Sadberry testified:

> Q.  Do you recall specifically as you sit here today . . . informing [Kessler] that an employee put down overtime that was not approved?
>
> . . .
>
> A.  There was one occasion.
>
> Q. . . .  When was that occasion?
>
> A.  I believe it was [plaintiff] put down an extra hour, which Billie [Wray] caught and she alerted me on, and I just let [Kessler] know just to let him know.
>
> Q.  To let him know that [plaintiff] had put down overtime?
>
> A.  Yeah.  Just to – you know, in case the report comes out and he says well, why is there an hour here of overtime, that he would know why there was.
>
> Q.  And [plaintiff] didn't receive approval for that overtime?
>
> A.  According to Billie Wray, no.

(Doc. 22, Ex. D at 128-29.)

> A brief discussion with [plaintiff] revisited previous conversations where he was informed that all overtime will have to be pre-approved and the last documented approval was for the week of September 3. ***[Plaintiff] confirmed he had no pre-approval other than 9/3.*** I advised [plaintiff] that for the week of 9/17 we would concede to the overtime since it had been worked and for Monday of the week of 9/24.
>
> [Plaintiff] advised that he lives 30 minutes away and it takes him longer to get to work than others. I empathized and stated that drive time is not considered part of his work day. I reiterated that all overtime must have prior approval.

(*Id*. [emphasis added].) Nothing in the record disputes the fact that the email was sent by Wray or the fact that Sadberry forwarded Wray's email to Kessler, who forwarded the email to Grant.

Plaintiff's objection to the Magistrate Judge's finding that Sadberry reported plaintiff's unauthorized overtime to Kessler is overruled.

**2. Objection to Magistrate Judge's finding that plaintiff's overtime was not authorized**.

The Magistrate Judge found that Kessler reported to Grant that plaintiff had claimed overtime, without preapproval. (Doc. 25 at 6.) Plaintiff contends that a reasonable jury could find that all his overtime hours were approved and that the overtime hours were essential to completing his work. (Doc. 26 at 4, 5-6.) Plaintiff relies on Sadberry's testimony to support his claim that "all his overtime was approved." (*Id*.) However, Sadberry testified that he never denied a request for overtime; he did not testify that plaintiff sought prior approval for overtime during the weeks of September 11, 2006, and September

4

24, 2006.  (*See* doc. 22, Ex. D at 75.)[4]  Indeed, plaintiff has not directed the court's attention to any evidence demonstrating that he had sought prior approval of overtime.  The court finds that a reasonable jury could not find plaintiff's claimed overtime for the week of September 11, 2006, was approved without evidence that plaintiff first sought pre-approval for the overtime work.

Plaintiff's Objection to the Magistrate Judge's finding that the overtime was not pre-approved is overruled.

**3.   Objection to Magistrate Judge's finding that Grant investigated plaintiff's timesheets based on reports of unauthorized overtime.**

The Report and Recommendation states:

> When Kessler then informed his boss, Melvin Grant, that the plaintiff had submitted overtime for [the] week [of September 11, 2006], Grant was suspicious of that overtime claim, because Grant had been in Birmingham on September 13, stayed late, and remembered that [plaintiff] had left early. [(Doc. 22, Ex. B at 164.)]  Grant states that Kessler had informed him that the

---

[4]Sadberry testified:

> Q.  . . . [T]he change in policy was to get approval prior to working overtime . . . ?
>
> A.  Right.
>
> Q.  And do you recall after this change in policy ever denying any employees from working overtime?
>
> A.  I don't think so.  I mean, most of the people were very, you know, explanatory on what they were going to do, and what they wanted to accomplish.

(Doc. 22, Ex. D at 74-75.)

5

plaintiff had put overtime on his timesheet: "[Sadberry] told [Kessler] that [plaintiff] had submitted overtime on his time card, then [Kessler related] it to me. [Kessler] would have never – he would have never known that [plaintiff] had submitted overtime, but for the fact that [Sadberry] told him, because [Sadberry] had to sign off on it." [(*Id*. at 117.)] . . . Grant directed Kessler to find out whether [plaintiff] worked the hours claimed for the week of September 11-17. Kessler checked the plaintiff's phone log-in and log-out times. Kessler testified that these times did not match with the number of hours [plaintiff] said that he worked. However, he also confirmed that records "are not an accurate reflection of the time an employee worked." [(Doc. 22, Ex. C at 79-80.)]

      Grant then instructed Kessler that "at the end of the day, the only sure way to find out whether his discrepancies were correct was to look at the office video and see . . . when [plaintiff] arrived and left." [(Doc. 22, Ex. B at 120.)] Kessler then checked the video log of entry and exit into the building for the week of September 11-17. This video confirmed that [plaintiff] overstated his time on September 13 by thirty minutes, and also overstated his time on September 11, 12, 14 and 18.

      Based upon this discrepancy, Kessler performed a more thorough comparison of the plaintiff's time records with that video system for seventy random days in 2006.

(Doc. 25 at 6-7 [footnotes omitted].)

Plaintiff's contention that Grant had no reason to investigate his work hours is based exclusively on two alleged facts: (1) that all overtime was approved; and (2) that Sadberry did not report unapproved overtime to Kessler. As set forth above, plaintiff's contention is not supported by evidence in the record.

Plaintiff also objects to the Magistrate Judge's decision to strike plaintiff's Exhibit K. (Doc. 26 at 8-9; *see* doc. 25 at 5 n.5.) This court has considered plaintiff 's Exhibit K, (doc. 22, Ex. K), which states the time plaintiff and Grant came and went on September 13, 2006, as determined by plaintiff's counsel after watching video tapes produced by defendant.

(Doc. 26 at 8 and n.6.)  This Exhibit indicates that plaintiff left defendant's office before Grant, contrary to plaintiff's assertion in his Objection.  (*Compare* doc. 26 at 8 ["In support of establishing Plaintiff's work schedule and to establish that Grant could not have known whether Plaintiff worked overtime on September 13[th] because Plaintiff was there before Grant and ***left after Grant***, Plaintiff presented a demonstrative exhibit." (emphasis added)], *with* doc. 22, Ex. K [noting that plaintiff left the office at 4:56 p.m. and Grant left the office at 5:13 p.m.].)

The court agrees with the Magistrate Judge that Exhibit K is due to be struck.  (*See* doc. 25 at 5 n.5.)  However, even if considered, Exhibit K does not affect the court's decision to accept the Magistrate Judge's Recommendation to grant defendant's Motion for Summary Judgment.  Plaintiff's Objection to the Magistrate Judge's finding that Grant initiated the investigation of plaintiff's timekeeping based on information that plaintiff had included unauthorized overtime for the week of September 11, 2006, is overruled.

**4.  Objection to Magistrate Judge's failure to view plaintiff's "timekeeping mistakes" in the light most favorable to plaintiff.**

Plaintiff contends:

> If Plaintiff was terminated for misstating his time, the Court should look into the company's policies regarding timekeeping.  The facts in evidence are that there were no written rules or policies about how employees are required to record their time.  [(Doc. 22, Ex. B at 54-55; *id*., Ex. C at 63, 90.)]  There are no written policies about when an employee actually starts work and when their time officially starts for time-keeping purposes.  [(*Id*., Ex. B  at 122; *id*., Ex. D at 66.)]  Grant admits that AIG's policies regarding how employees keep up with their times could be improved.  [(*Id*., Ex. B at 178.)]

7

>       At worst, an improper investigation was conducted. The result was that Plaintiff may have misstated his times on a few occasions. There was also undisputed evidence that Plaintiff understated his times on several occasions. Plaintiff offered to make up any time he misstated. The Court is required to take Plaintiff's testimony as true for purposes of summary judgment. Plaintiff's testimony was that:
>
>> "I do not have knowledge that I put any time on my time card that was inaccurate. I cannot say that I inaccurately recorded my time. If I did, I didn't know it knowingly, did not do that wilfully."
>
> [(*Id*., Ex. A at 195.)]
>
>       Furthermore, rather than conduct a department or company-wide investigation into how the employees kept their time and whether other employees made the same mistakes, Melvin Grant only investigated one person and only terminated one person – the same person who complained to him about racial discrimination (i.e., Plaintiff).

(Doc. 26 at 11-12.)

In his Report and Recommendation, the Magistrate Judge states that plaintiff told Grant, Kessler, and Sadberry that "the discrepancies were mistakes" and were "unintentional," and that plaintiff had "offered to make up the time." (Doc. 25 at 8.) Nothing in the Magistrate Judge's discussion indicates that he found otherwise. (*See*, *e.g.*, *id*. at 18.)

Plaintiff's Objection that the Magistrate Judge erroneously found he had intentionally falsified his time is overruled.[5]

---

[5]Whether plaintiff mistakenly or intentionally overstated his time is not relevant; the issue is whether Grant, the decision maker, honestly believed plaintiff had been dishonest. *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999)("An employer who fires an employee under the mistaken but honest impression that

8

**B. OBJECTIONS TO LEGAL ANALYSIS**

**1. Objection to Magistrate Judge's finding that plaintiff's complaint of discrimination lacked objective reasonableness.**

Plaintiff contends that the Magistrate Judge erred in finding that "plaintiff's belief that he was denied the promotion [to Extended Handler/Claims Representative III] based upon his race was not objectively reasonable." (*See* doc. 25 at 17.) The Magistrate Judge found that plaintiff could not show that his complaint about race discrimination was objectively reasonable because (1) plaintiff did not apply for the position and (2) he did not show that he was as qualified or more qualified that Couk, the white employee receiving the position. (Doc. 25 at 16-17.)

In order to establish a prima facie case of retaliation in violation of Title VII, plaintiff must establish: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). Under Title VII, the "statutorily protected expression" includes conduct under the "opposition clause" – conduct

---

the employee violated a work rule is not liable for discriminatory conduct. An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long *as its action is not for a discriminatory reason*." (quoting *Jones v. Bessemer Carraway Medical Center*, 151 F.3d 1321, 1324 n.16 (11th Cir. 1998)(quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984))))(emphasis in *Damon*; internal quotations omitted); *see also Lewis v. Metropolitan Atlanta Rapid Transit Authority*, No. 08-15885, 2009 WL 2599571, *2 (11th Cir. Aug. 25, 2009)(quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991); citing *Cooper v. Southern Co.*, 390 F.3d 695, 730 (11th Cir. 2004)).

9

"oppos[ing] any practice made an unlawful employment practice by [Title VII]" – and conduct under the "participation clause" – "[making] a charge, testif[ying], assist[ing] or participat[ing] in any manner in an investigation, proceeding, or hearing under [Title VII]." *See* 42 U.S.C. § 2000e-3(a).

Plaintiff contends that he engaged in expression protected by the opposition clause when he complained about race discrimination with regard to the promotion of a white female, Margaret Couk.

> "[N]ot every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." [Little] at 959 (quoting *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir.1978)). While a plaintiff can prevail on a retaliation claim based on opposition to an employment practice that is not actually unlawful, [the court has] to consider the controlling substantive law in [the Eleventh Circuit] when [it] assess[es] whether a plaintiff's mistaken belief is objectively reasonable. *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 & n.2 (11th Cir. 1998) (examining the objective reasonableness of an employee's belief that an employment practice is unlawful in light of existing substantive law). Where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no decision of this Court or of the Supreme Court has called that precedent into question or undermined its reasoning, an employee's contrary belief that the practice is unlawful is unreasonable. *See id.* at 1388-89; *see also Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1317 (11th Cir. 2002)("Finally, the plaintiffs may not stand on their ignorance of the substantive law to argue that their belief was reasonable. As we have stated previously, if the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge."   (internal citations, brackets, and quotation marks omitted)).

*Butler v. Alabama Dept. of Transp.*, 536 F.3d 1209, 1213-14 (11th Cir. 2008). Therefore, plaintiff must show that a reasonable person would have believed defendant's decision to promote Couk and not plaintiff was based on race.

In order to establish a prima facie case for a discriminatory promotion claim, an employee must prove that (1) he is a member of a protected class, (2) that he was qualified and applied for the position at issue, (3) that defendant rejected him, and (4) that defendant selected a person outside the protected class to fill the position. *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (2005).

Plaintiff testified he told a manager, Don Day,[6] that he was interested in the position of Extended Handler/Claims Representative III, for which he believed he was qualified. A white employee, Couk, was selected for the position. (Doc. 22, Ex. A at 185; *id.*, Ex. D at 32.) Day was not involved in the decision to promote Couk, which was made by Sadberry. (*See* doc. 22, Ex. D at 31-32.) Plaintiff testified that he did not believe Couk was qualified because she had been with defendant less than six months prior to her promotion. (*Id.*, Ex. A at 174.) Plaintiff believed that he was qualified for the position. (*Id.* at 176.)

The Magistrate Judge found:

> The plaintiff has presented no evidence that he was qualified for the job. It is undisputed that the position required a minimum of three to five years experience handling complex auto claims; the plaintiff falls short here. Even if the plaintiff had been qualified, Couk possessed thirty years of relevant experience. *See Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d

---

[6]Day was a Unit Manager and he was responsible for supervising four Claim Representatives; however, he did not supervise plaintiff. (Doc. 22, Ex. A at 141.)

11

> 1344, 1349-50 (11th Cir. 2007)("[A] plaintiff must show that the disparities between the successful applicant's and his own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'") Finally, a promotion complainant "must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." *Id*. Such evidence is lacking in this case. Therefore, the plaintiff's belief that he was denied the promotion based upon his race was not objectively reasonable. Accordingly, he has not made out a prima facie case for retaliation.

(Doc. 25 at 17.)

The record shows that plaintiff had three years of experience as a Claims Representative (Doc. 22, Ex. A at 63-64, 168 [plaintiff worked for USAA from March 17, 2003, until April 20, 2005, and he began working for AIG in May 2005].) The record is not so clear that he had three years of experience handling "complex auto claims." Plaintiff testified that, as a Claim Representative II with defendant, he handled complex automobile claims. (*Id*. at 99-100.) He also testified that he handled "moderately complex automobile claims" after he was promoted to Senior Claims Representative while working for USAA. (*Id*. at 68.) However, during his deposition, plaintiff could not recall the date he was promoted to Senior Claims Representative. (*Id*.)

Therefore, viewing the evidence in the light most favorable to plaintiff, the record shows that plaintiff had three years of experience handling automobile claims, but less than three years experience handling complex automobile claims. The court finds that evidence is not sufficient to find that plaintiff was qualified for the Extended Handler/Claims

Representative III position. Plaintiff's objection to the Magistrate Judge's finding is overruled and the Magistrate Judge's Report is accepted.[7]

With regard to plaintiff's application for the Extended Handler/Claims Representative III position, the Magistrate Judge found that plaintiff had admitted he did not apply for the position. (Doc. 25 at 10.) He also found:

> In this case, the most glaring problem with the duty of this plaintiff to show that his belief of promotion discrimination was objectively reasonable is that he did not apply for the position at issue. *See Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1275 (11th Cir. 2002)(affirming summary judgment for employer because "[plaintiffs] never applied for the . . . position"). The plaintiff argues that the position was not physically posted in the workplace, and that a physical posting was required. There was no requirement that the promotion be posted at all.

(Doc. 25 at 16-17 [footnote omitted].) Plaintiff contends that his failure to apply for the position, which was posted on-line,[8] does not prevent his complaint from being objectively reasonable because the position was not physically posted in the office and he had expressed his interest in the position to one of his managers, who was not a decision maker.

The Eleventh Circuit has held:

---

[7]The court also finds that Couk's relative qualifications for the position of Extended Handler/Claims Representative III, are irrelevant to the determination of the objective reasonableness of plaintiff's complaint of discrimination. *See Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998)(an employee is not required to prove that he was equally or more qualified than the selected employee to establish a prima facie case of discrimination with regard to promotion; relative qualifications are only relevant if defendant asserts such qualifications as its reason for rejecting the employee).

[8]The record contains evidence that defendant's standard operating procedure was to post job openings on its intranet web site. (*See* doc. 22, Ex. B at 94-96; *id*., Ex. C at 22-23.)

> By showing that he applied, the plaintiff shows that the employer knew he was interested in the job. But when there is no formal notice of the job's availability, the plaintiff may have no means, within his own knowledge, of showing whether the employer considered him or not. Furthermore, when an employer uses such informal methods it has a duty to consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed an interest.

*Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984). A policy of posting openings on-line is neither secretive nor informal. *See Gremillion v. Walgreen Co., Inc.*, Civil Action No. 2:05cv484-ID (WO), 2006 WL 1794745, *5 (M.D. Ala. June 28, 2006).

The court finds that plaintiff was not excused from the requirement that he apply for the Extended Handler/Claims Representative III position and his statement to Day was not sufficient to constitute an application. Moreover, a reasonable person in plaintiff's position would not have believed that he had applied for the position and/or that he was excused from applying. Thus, plaintiff's expression of opposition to race discrimination was not objectively reasonable.

Therefore, plaintiff's Objection to the Magistrate Judge's reasoning supporting his finding that plaintiff failed to establish a prima facie case of retaliation is overruled. The court adopts the Magistrate Judge's finding that plaintiff's complaint was not objectively reasonable. The court will dismiss plaintiff's retaliation claim on the ground that his complaint about race discrimination with regard to the Extended Handler/Claims Representative position was not objectively reasonable.

**2. Objection to Magistrate Judge's Finding that plaintiff did not show defendant's reason for his termination was pretextual**.

Plaintiff contends that he presented sufficient evidence to withstand defendant's Motion for Summary Judgment by showing (1) his overtime was authorized and reasonable; (2) the close temporal proximity between his termination and his complaint to Grant about race discrimination; (3) his complaint to Grant and Grant was the decision maker with regard to his termination; and (4) Grant had no reason to investigate plaintiff's timekeeping.

For the reasons set forth above, the court finds that Grant had reason to investigate plaintiff's timekeeping and to believe that his overtime was not pre-approved.

The law is well established that mere temporal proximity between protected conduct and an adverse employment action may establish the causation element of a prima facie case of retaliation. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); *Higdon v. Jackson*, 393 F.3d 1211, 1220-21 (11th Cir. 2004). However, mere temporal proximity, in this case, is insufficient to establish that defendant's articulated reason for terminating plaintiff, his timekeeping errors, is unworthy of credence. *See Wascura v. City of South Miami*, 257 F.3d 1238, 1247 (11th Cir. 2001)("In light of the ample legitimate reasons for the termination decision proffered by the City, the truth of which was never effectively challenged, and in light of the fact that Wascura adduced virtually no evidence of discrimination, we cannot conclude that a reasonable jury could find for the Plaintiff based merely on the three and one-half month temporal proximity and the very weak inference

from the Mayor's alleged comment that Wascura could use the illness as a face-saving excuse.")

"A plaintiff may show pretext by either directly persuading the court that a [retaliatory] reason motivated the employer, or by indirectly showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). The relevant inquiry on the issue of pretext is "highly focused" – "The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1537-38 (11th Cir. 1997)(citing *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)). "To satisfy this threshold showing of pretext, a plaintiff may discredit the employer's proffered legitimate reasons by showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employment decision, or (3) that they were insufficient to motivate the employment decision." *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1564 (11th Cir. 1995)(Johnson, J, concurring)(citations omitted); *see Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir. 1997)(Evidence of a pretextual explanation can be established by showing "that the employer's proffered reasons are (1) factually baseless, (2) not the actual motivation for the [employment decision]; or (3) insufficient to motivate the [employment decision]."). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast

the reason but must meet it head on and rebut it." *Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007)(quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir.2004)).

As set forth above, Grant was notified that plaintiff had submitted overtime that had not been pre-approved for the week beginning September 11, 2006. On September 13, 2006, plaintiff left work at approximately 5:00 p.m., and, despite leaving work at 5:00 p.m., he claimed overtime for that day. Grant decided to have Kessler investigate plaintiff's timekeeping, which resulted in Kessler reporting that plaintiff had misrepresented his time on 63 of 70 days. Plaintiff did not dispute that he had misstated his time on these days; rather, he argued that his misstatements were unintentional and that he would make up any over-stated time. Plaintiff was terminated for dishonesty.

The court finds that defendant's articulated reason for terminating plaintiff – his dishonesty on his timesheets – is a reason that would motivate a reasonable employer. Therefore, plaintiff, to show defendant's articulated reason is a pretext, must meet the reason head-on and rebut it. Plaintiff argues that Grant had no reason to investigate him and that all his overtime was approved; as set forth above, the record does not support plaintiff's arguments.

Plaintiff's objection to the Magistrate Judge's finding that he had failed to show defendant's articulated reason for his termination was pretextual is overruled.

**CONCLUSION**

For the foregoing reasons, the court is of the opinion that plaintiff's Objection is due to be overruled. The court is of the opinion that the Magistrate Judge's Report is due to be adopted and his Recommendation is due to be accepted. Therefore, defendant's Motion for Summary Judge, (doc. 17), will be granted; and plaintiff's Complaint will be dismissed with prejudice.

**DONE**, this the 21st day of September, 2009.

_Sharon Lovelace Blackburn_
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE